and the consolidated matter of the United States of America v. Harris. Ms. Martin. Good morning. May it please the Court, I'm Christy Martin on behalf of Appellant Anthony Jackson. With your permission, I'd like to reserve two minutes of my time for rebuttal. Granted. Thank you. Your Honors, before the Court today, I think it's a straightforward question of statutory interpretation as to the definition of covered offense under the First Step Act of 2018. Every presidential circuit decision to look at this to date has held that a covered offense refers to the statute of conviction and therefore the quantity element of conviction rather than some relevant conduct associated with that count. And the panel certainly is aware of how the other courts of appeals preponderate on this question, but we have to decide not as a matter of numerical result but instead, as you framed it, as an issue of statutory interpretation and one, therefore, that may take us beyond just the plain language but to have a need to apply certain canons of construction. So I'd ask you most importantly, or whether it is most important to you, that is as your best textual argument, is it reliance on the last antecedent rule? Well, Your Honor, I think that is the best point because that is the proper use of the English usage. I would say that it's the most simple and natural reading. I do have an alternative argument, which perhaps this is what you were looking for, which is that even if we accept the government's position that the modifier here, the statutory penalties for which were modified, refers back to the word violation, even if we sort of push aside the rule of statutory interpretation and we move to violation, we have to look at violation, first of all, not in isolation but as part of a noun phrase, which is a violation of a federal criminal statute. And I would argue whether in isolation or as part of that noun phrase, that refers to conduct no more or no less that meets the elements of the statutory offense.  I would argue that we are still looking at the statute and, therefore, the quantity of conviction. But the statutory penalties had to be modified, right? That's correct. And statutory penalties, as I'm looking at a pre-fair sentencing act, were 0 to 20 years, 5 to 40 years, 10 to life. Post-fair sentencing act, statutory penalty ranges are 0 to 20 years, 5 to 40, 10 to life. Same statutory range. They only change when the quantities change, right? That's correct. The difference now is that it used to be 5 grams or more for 5 to 40 years, and now you need 28 grams or more. Yes, that's correct. So the statutory ranges only change for people whose quantity fits into the categories that trigger the statutory change. Well, I think I would sort of supplement that point with that has to be based on the quantity element of the offense rather than on any actual conduct. Right. And your client's quantity was 48. Correct. And that doesn't change. If his quantity were 27, then his statutory range under the old regime would have been 5 to 40, and under the new regime it would be 0 to 20. So if his quantity were 27 grams, his statutory range would change. But at 48 grams, statutory range does not change. Well, it does change because what we're talking about is 5 grams. 5 grams is what's really found in guilty. Now, if your argument is you want a chance to go back to Judge Bailson and say, Judge, no, no, no, our client had less than 28 grams, so his statutory range has changed, then it would seem you would have an opportunity to do that. Is that what you're saying? You want just a chance to prove that the number was not 48, the number was something less than 28, which would change his statutory range. I think, no, that's not at all what our position is. Our position is that that relevant conduct quantity is not pertinent. So what do you want to show on remand? On remand, you're going to admit that he's got 48, but you just want a new sentence with 48 grams. Well, when you say new sentence, what we are asking for is for the court to take a look at all of the sentencing factors and make a discretionary decision about whether the court... But this isn't about the 3553A factors. This isn't about how well he's behaved in prison or what his family circumstances are. This is all about writing what was determined to be a wrong about the crack powder disparity. That's what this is all about, isn't it? Well, I think that's sort of a narrow perspective on the purpose of the First Step Act. I mean, the First Step Act was the kind of... Well, let's start with the Fair Sentencing Act, though. Okay. I mean, all the First Step Act does is make the Fair Sentencing Act retroactive. That's why you're in the game here, right? Well, more broadly, the First Step Act is actually a very large piece of legislation, the state of goal of which is to reduce the number of persons in federal prisons and have them reentered into society in a safe way. But as relevant to your client's case, this is a crack case, right? This is a crack case, absolutely. Okay. So the Fair Sentencing Act ameliorates the disparity, takes it from 101 to 18 to 1, right? Yes. And then the First Step Act makes it retroactive, which is why we're here. Yes. So is your argument that you want the judge to look at this again so you can have a wide-open range of the 35 to 3A factors, or is it so the judge can look at this and say, Judge, crack is treated differently now than it used to be. My client should get a lower sentence. I think both of those descriptions are fair. When you say wide-open, we're not asking for resentencing in the sense that Mr. Jackson would no longer be a career offender if he were sentenced today. This is not a procedure that calls for technically the resentencing, correct? That's correct. We do agree with that, Your Honor. But when we get to the discretionary stage, we do believe, and this is currently, I think, before, Your Honors, in United States v. Easter, that at the exercise of discretion stage, the judge can take into account all of the sentencing factors. It can. It can. Many of our district courts have been looking at pepper information, have been looking at rehabilitation. But we're not talking about the discretionary stage. We're talking about just the door to have a district judge put his eyes on that. Thank you. In some ways, we may be looking at where is the right place to take account of the fact that with a stipulated quantity or a threshold quantity that may be charged as an Eastern district would mean that there was no difference if someone were sentenced as if the Fair Sentencing Act were in play. Is that something that comes into play at the eligibility stage, or should we think about that possibly as a threshold determination? In the same way that when we're looking at 3582, you consider first whether there's going to be a difference and then the other 3553A factors, here, would it be appropriate to conclude given the purposes of the Act that if a district court were to determine at the discretionary stage that based on a particular quantity, there was no difference, there would be no difference in the statutory or guideline range, that at that point the analysis stops. If there would be a difference to go forward and continue the 3553A analysis as to the other factors, would that be – I understand that's a way – if there were open-ended discretion, a district court could think about it that way. But as we're giving guidance about what constitutes an abuse of discretion, is that a way that we should give guidance? And if not, why not? I want to back up and make sure I answer your questions in order. First, as far as – I do want to come back to sort of the policy and disparity question that you raised. But I will start by saying that you are raising very important questions about disparity, but I think we are looking at it in much too narrow of a tunnel. And that is why it needs to go to the district court to put a set of eyes on each individual case. Disparity is a policy issue, though, right? It is. It's a policy issue, but it's also – it's a sentencing factor, and it's something that we give – Well, certainly. And as a sentencing factor, it is one among many that the district court may – to use the word Congress chose – may consider as it has – after it has determined that there is eligibility, right? Absolutely. Yes, and I go to your question. So we don't – I mean, we don't necessarily open the door to considerable disparity throughout the land. Don't we trust district judges to consider the potential for disparity, to make comparisons between a defendant and a co-defendant, or contrasts? Always. I absolutely agree with that. And I absolutely agree with that, and that's why I think we should – And Congress obviously contemplate that by indicating in the language here that a court that imposed a sentence for a covered offense may, on motion of the defendant, directly the Bureau of Presidency, the attorney for the government or the court, clearly invoking the vast discussion of the district court. I would agree with that. Absolutely. And I know the discretion issue does come up more acutely in Mr. Harris's case, and my colleague may be a little bit more in a better position to respond to your question, which if I understood it was whether at the discretionary stage the judge could look and say, I don't believe this range would change and make that decision right there without engaging in a further analysis. If I understood your question correctly. To put it more succinctly, if the as if wouldn't make a difference in either the statutory or guideline range, can the court then stop? Because the language of this statute says that the court should decide the case on the merits, I think that we are getting into sort of almost a reasonableness situation where have there been many other factors, some of the ones that Judge Smith just raised, brought to the attention of the court that the court should have considered as well. So that would be my position as to discretion.  Because a number of authorities as well as the parties who have addressed this have been troubled by repetition that occurs within the statute, that is, the use of the word statute and statutory. Are they redundant? Aren't they redundant? I don't think they are. I think it was the Worsen Court or it might have been Jackson that said at first blush it may appear that way. Although I have a different reason for thinking that it's not redundant. For about 12 years now, we've been working on retroactive guideline amendment application and all we thought about was whether the guidelines changed. After that time, I would say to date this court just recently in United States v. Hardwick remanded a case because the court mistakenly thought that the guideline penalties controlled eligibility. That also came up in the Sixth Circuit in the Bemis case and as recently as last week, the Second Circuit panel in United States v. Holloway mentioned during oral argument that it seemed like probation and the district courts were all very confused about whether they should be looking at the guideline ranges versus the statutory penalties. In that sense and because we know that this came as an incremental sort of remedial statute after all of those guideline amendments, which were very, very narrowly set up, I think it was important to make clear that we're looking at the statutory ranges. That's why I think it's important that we look at the quantity element of conviction, particularly because this is a doorway, just a doorway through which someone's case gets considered. In Mr. Jackson's case, there was some extra conviction language in the indictment, but the jury was not instructed to find that and 48 grams is not an element of the offense in any event. We have cases like that. We have cases where there are stipulations. I'm sorry to interrupt Ms. Martin, but you're right. It's not an element of the offense, but that's why I asked you on remand, do you want to try to show the district court that 48 is the wrong number? Because if you could show the district court that the right number is 10 grams or 27 or 27.99, then you would be showing that the statutory range for your client has changed. But if you're telling us that 48 is the number and that number is not going to change, which is it? I think, and I'm sorry if I'm failing to understand your question. My question is do you want to... We are not going to go back and challenge... The 48, the finding. The judge had made a finding that you objected. Your client was only convicted of five grams or more. Yeah. The PSR says he had 48 point something. District judge finds, overrules the objection, 48 is the number. I'm asking you, do you want an opportunity to go back and say, Judge, this client was never convicted by a jury of his peers by 48 grams. We're going to show you that the right number is 27 grams. Or are you going to go back on remand and say, Judge, 48 grams is the number. And even though the statutory range doesn't change for someone convicted of 48 grams, we still want you to give him a new sentence, a more lenient sentence than the one you gave him. That is, in this particular case, that is what we'll be doing. Based on the evidence that was put before the judge at sentencing, I do not see that we will be going back and asking to modify that quantity finding. I just am very, very reluctant to make that representation as to many, many other cases. Absolutely not. We're only talking about this case. I mean, these arguments have ramifications for others, but I'm interested in Mr. Jackson's case. Absolutely. So thank you for answering my question. Sure. All right. We'll head back on. Thank you. Ms. Stern? Good morning, and may it please the Court. Samantha Stern, Assistant Federal Public Defender. I represent Kevin Harris, and I'd like to reserve two minutes for rebuttal. Go ahead. Courts analyzing Section 404 motions engage in a two-step analysis. Eligibility, and then they move on to the exercise of discretion and determine whether to reduce the sentence. If this Court adopts a statute-of-conviction-based approach to determining Section 404 eligibility, then it must logically and necessarily follow that a court analyzing whether to reduce the sentence must do two things. First, determine the Post-Ferrous Sentencing Act statutory range by relying on the offense of conviction and, second, make any necessary guideline adjustments that flow from that determination. All right. And if we look at actual conduct, the inverse applies, which is why you're arguing for statute of conviction. My argument relies on this Court taking the approach of the other circuits that have decided this question and analyzing this using the statute of conviction. Okay. So let's look at your client was convicted under this statute, and the quantity, unlike Mr. Jackson's case, here we have a stipulation, 33 grams, correct? That was not the offense of conviction, Your Honor, respectfully. No, I understand that. I'm asking did your client stipulate that he had 33 grams? He stipulated to that quantity for purposes of computing his guidelines under 2D1.1. That was the purpose of the stipulation. Okay. And do you want a remand so that you can go back and try to show Judge Fisher that, in fact, your client didn't have 33 grams, he had 27 or 10? No, we want a remand for the Court to actually give retroactive effect to the Ferrous Sentencing Act. Okay. So if your client's name were Howard instead of Harris, and he walked into federal district court in front of the same judge in Pittsburgh, and he pleaded guilty to the same crime as Mr. Harris, and he stipulated that his quantity was 33 grams, what would his statutory range be? Statutory ranges exist for statutory violations. Violations are defined by the elements of the offense. I'm sorry. I don't think that answered my question. If Mr. Howard walked into federal district court in Pittsburgh and stipulated to the same criminal offense, same violation that Mr. Harris did, and he stipulated to possessing 33 grams of crack, what would his statutory range be? I'm not trying to – You don't know what the statutory ranges are? If he was convicted of possession with intent to distribute 28 grams or more of crack cocaine, then he would have a statutory range of 5 to 40 years. And what was your client's statutory range when he was convicted? Five to 40 years for possession with intent. Statutory range is not different between Harris and the hypothetical Mr. Howard. So my question to you, Ms. Stern, is wouldn't it be absurd for Mr. Howard to not be entitled to a more lenient or a reduced sentence having been convicted under the remedial scheme of the First Step Act while your client, Mr. Harris, was convicted prior to the adoption of that remedial scheme and would be entitled to a reduced sentence? The judge could certainly take that into account in determining whether a reduction is appropriate. What would be available to the court to address the apparent disparity that Judge Hardiman's question has posed? The court has to do the uncomfortable task of applying the Fair Sentencing Act retroactively and applying the 0 to 20 range that applies to this offense of conviction, possession with intent to distribute 5 grams. To Judge Hardiman's point and to Judge Krause's point earlier, how then can the court engage in the stipulated quantity, uncharged quantity in the analysis? The answer is in evaluating the other 3553A factors. So, for example, the need for the sentence to reflect the severity of the offense. Drug quantity is somewhat of a proxy for severity of the offense in drug cases, albeit an imperfect one. Relevant conduct. Relevant conduct, exactly. It also will factor into the guideline range. There's no issue with judge-found facts factoring into guideline determinations. So that's not an issue here. What we're saying is- All right, but that's just the application of the guidelines themselves, which get you to a score based upon the offense conduct and based upon the prior record of the particular offender. Now, at the sentencing proceeding, what, if any, mechanisms are available to the district judge to attempt to ameliorate this judge being, as Judge Hardiman's hypothetical pointed out, they appear before the same judge. What is available to that judge in an appropriate discretionary manner to try to ameliorate the disparity that has been posed? Certainly, the judge can take into account whether a sentence reduction would promote unwarranted sentencing disparities. But we have to step back and remember the whole purpose of this portion of the legislation is to close an unwarranted disparity that existed between crack cocaine and powder cocaine offenders. But what Judge Hardiman's question is posing to you is that by closing one, it may be opening another. Sure, and the Supreme Court recognized the promotion of additional disparity. Anytime you have a remedial statute, there's going to be line drawing, there's going to be a new set of disparities. New set of disparities is not a reason to contort the meaning of this very clear statute. You're right about that, but here's what's so strange. People convicted for crack offenses under your, as I understand, your proposed interpretation, people convicted before 2010, before the Fair Sensing Act, who are on notice of this really severe disparity, 100 to 1, those folks are going to be treated better than the folks who are prosecuted today after the remedial scheme. And I'm having trouble understanding how people who are prosecuted after the adoption of a remedial scheme can end up worse off than people who are prosecuted under a more draconian scheme. Respectfully, Your Honor, you're comparing apples and oranges. The scheme under which the defendants who are now eligible for relief under Section 404 were sentenced was a very harsh scheme, not only because of the disparity, but many of them were sentenced pre-Booker, pre-Apprendi, pre-all of the amendments to the guidelines that now have attempted to make sentences for nonviolent drug offenders more fair. The people who've been sentenced post-2010 have been sentenced under an entirely different sentencing scheme. All right, so to follow up on your metaphor, Mr. Harris is an apple and Mr. Howard is an orange. I assume then that what you have gone on to describe is a completely new sentencing regime which provides some means by which the district judge may look at these two cases, the apple and the orange, and somehow, if not eliminate, mitigate the disparity between those two sentences. Absolutely. If there's a concern with disparity... Tell me specifically what mechanisms are available to do that. That's what I've been pressing. This is what district courts do all the time when they weigh the 3553A factors. I spent 14 years as a district judge. I know pretty much what they do. What I want to hear from you is in this particular setting, given the discretion that now is provided to them, especially in the advisory sentencing guidelines regime, given the change that the Fair Sentencing Act brought about, what could a judge do with Judge Hardiman's hypo to try to make these two sentences comparatively alike? Compare actual cases? I'm not sure if there's an answer Your Honor is looking for. Certainly, the judge could deny the motion altogether if the concern with disparity is... That certainly would not be the intent of the statute, would it? You know, and they posited the offender with kilos of actual crack cocaine quantity who's now getting the benefit of a lower statutory range. There might be a case where a reduction is not appropriate because the sentence is... But the whole point to the Chief Judge's last point, the purpose of this legislation, and I think what I'm challenging you on and I want to hear from the government is, shouldn't we look at the statutory history here, the evolution of this? And tell me if you agree with my understanding of the evolution. My understanding of the evolution of the statutory federal criminal penalties was that there was a severe, severe draconian reaction to crack and the violence associated with crack. The penalties were severe and had this great disparity of 100 to 1 from crack to powder. Are we on the same page so far? We are. Okay.  Remedial legislation was passed in 2010 to change that in favor of the accused. Agreed. Okay. And then in 2018, the First Step Act comes along and says, we forgot to make 2010 or we should have made the Fair Sentencing Act retroactive. Agreed? We are finally making the Fair Sentencing Act retroactive. Okay. So we're on the same page with all that. So the whole point of this statutory history, not legislative history, what one senator said or what Congresswoman said, the statutory history is to give relief to defendants and the convicted who are involved in crack cases. So to the Chief's point, if the answer is, well, a lot of these people shouldn't get relief, what's the point? As I'm reading this law, there should absolutely be relief, but only for people whose statutory ranges are changed. And the relief should almost be automatic. We'll see if the government admits that. But the relief should almost be automatic for people whose statutory ranges are changed. But I don't understand how covered offense can include people like your client whose statutory range was not changed. So explain why I'm wrong on the last point. And then Judge Krause has a question. Congress legislates in front of background legal principles. One of the most basic sentencing principles is that judge-found facts are not a basis to increase a mandatory minimum or a maximum sentence. So we cannot forget those basic principles, Fifth Amendment, Sixth Amendment, Rule 11, when we look at these cases under Section 404 and determine what the penalty range is today, what it means to sentence these folks as if the Fair Sentencing Act were in effect at their time of offense is to look to the statute of conviction and lower the ranges. If you're concerned then about disparity that results, you weave that into your 3553A analysis. That's not what the court did here. The court did not give proper retroactive effect to the Fair Sentencing Act when she engaged in fact-finding, albeit based on a stipulation, but in other cases it will be based on far, far less. So, Ms. Stern, does this ultimately go back to an issue of treating the offense of conviction as the quantity, as an element of the offense, the difference between the statutory range based on what was found by a jury for an element informing what constitutes a violation for eligibility purposes versus a guideline range? Yes. To put it another way, I guess I'm wondering as I'm listening to the dialogue whether the analogy before and after might not be that after the Fair Sentencing Act someone is charged and convicted of five or more, that that's what the indictment says and that's what's found by a jury, and it's a stipulated quantity just like before. So the statutory range before and after then is actually identical. The difference is that the government now knows to charge 28 or more, and so we'll see things differently going forward, but that's a way of looking at the meaning in words definition, the violation, to include the element as part of that requiring under Booker that it have been found by a jury. And I'm wondering if that comes back to, if I'm understanding that part of your argument correctly and if that actually comes back to a statutory interpretation issue. Your Honor, the statutorily charged drug quantity that Mr. Harris admitted as an element of this offense was five grams or more. What the 33 grams is is a stipulation for guideline purposes. When the judge made her findings that the statutory range would be the same today, subsumed in all of that are actually quite a few assumptions, that if this case had been charged post-Fair Sentencing Act, the government would have charged 28 grams or more, that Mr. Harris would have pled guilty to 28 grams or more, that he would not have been able to ultimately bargain for a lesser included offense. There's quite a bit of fact-finding that actually we're assuming here, and the judge has in effect amended his offensive conviction to have him stand convicted now of possession with intent to distribute 28 grams or more. That sounds like you want a new trial now. No, that's actually what the government's approach is. That's what this exercise is. As one of the district courts grappling with this put it, this is historical revisionism at its worst. It may be uncomfortable that the new penalty structure and the old penalty structure caused this friction between these cliff quantities, but giving the Fair Sentencing Act retroactive effect and without abandoning all of the normal principles, constitutional principles, that courts engage with in sentencing analysis, which is you don't find your own facts to increase someone's statutory minimum. You don't find your own facts to increase the maximum. You just don't. Why should that be allowed here? All right. Ms. Stern, before you sit down, a quick question, which perhaps is in anticipation and for the benefit of Mr. Zosma's argument. I guess I'm not surprised, but I find it somewhat curious that given some of our questions over the last ten minutes and going through the legislative history here and given the congressional intent going all the way back to what I remember in the 80s and some of the draconian sentences that were enacted going up to 2010 and the Fair Sentencing Act through 2019 and the First Step Act, that if a parade of horribles does in fact play out, as Judge Hardiman's hypo and some of my follow-up questions suggest is a possibility, isn't an answer that Congress can once again try to get it right and address that legislatively. If judicial discretion doesn't work in the long haul, if we end up with those disparities, first instance is trust the district judges. But if they disappoint us, Congress can revisit this area as it has several times already. Is that an answer? Is that a viable answer? As the Supreme Court recognized in Dorsey, if this scheme creates a disparity, it's a disparity Congress intended. In Dorsey, did the Supreme Court look at the statute or actual conduct? That was not an issue in Dorsey, but the courts applying Dorsey to these, I'll call them the awkward threshold quantity cases, the First Circuit, the Sixth Circuit, I cited them in my reply brief, they applied the lower statutory ranges that corresponded with the statute of conviction. Sometimes it's best, Ms. Stern, that when a judge serves you up a softball, you just accept it, catch it, say thank you, and sit down. Thank you. We'll have you back in a moment. Mr. Zosma. Good morning, Your Honor. Mr. Zosma, please, the court, Robert Zosma on behalf of the government. This is about statutory history, and it is about legislative history. I thought we started with the text, Mr. Zosma. I'm going back to statutory interpretation 101. I've forgotten something very fundamental here. We do start with the text, given I have 11 minutes or maybe a little bit more. But you know how generous we are. And I appreciate it very much. We do start with the text. I am not here to tell you that this text is crystal clear. I do believe that our interpretation of the text is the correct one. If we were limited to the language, it goes into that redundancy that Your Honor referred to. Well, let's go back to that. Put aside for right now the redundancy, which has been noted. What about the last antecedent? Doesn't it really militate strongly in favor of the interpretation that your colleagues on the other side of the courtroom have espoused? The rule of the last antecedent is an applicable rule. It's considered. It is never controlling. There are many examples in this Court's precedent, Supreme Court precedent, where it's one of the things you consider. Certainly, if you look at that rule, the last antecedent here is federal criminal statute, not violation. But the more normal understanding of this is that you have one coherent phrase here, a violation of a federal criminal statute, the statutory penalties of which, when you look at that, statutory penalties, given the repetition of the word, necessarily refers to violation. Isn't the word violation necessarily caught up in specific facts? It is. So why would Congress then go to the use of a word like that, that is necessarily factual in its meaning, as opposed to something with a clear, narrow meaning as federal criminal statute? Because the statutory penalties in this area involving crack cocaine are all about the actual facts. It's only about quantity. And importantly, the word violation – Is that why – let's go to the legislative history then, which unfortunately is rather sparse, if existent. But is that really what Congress had in mind, as opposed to amending, changing an entire sentencing regime here? Let me answer a couple of ways. First of all, I can say one more thing about the word violation. That word violation is specifically in Section 841, which is the penalty provision. That is, 841 is an unlawful drug trafficking offense. And 841B says, if you have a violation of 841A, meaning you have distributed drugs or possess with intent to distribute, if you have a violation, the penalties are as follows. And then it gives different penalties depending on drug type and drug quantity. So in this specific area, violation is a very important word. It refers to the crime you've committed. And then if the penalties change, the penalties only change if you change the quantity. And that's why in this specific area of drug sentencing, this necessarily has to refer to quantity. When we then get to legislative history, your next question, this becomes obvious. The purpose – and I don't have to go all the way back to 1987, though I'm happy to. But obviously, the Fair Sentencing Act was adopted to ameliorate the disparity between powder and crack. It didn't fully do it, changed it from 100 to 1 to 18 to 1, but it made a difference. And there were many people who were left behind who had been sentenced before 2010. If you had 10 grams of crack, you were in Subsection B before, and now you'd be in Subsection C. If you had 51 grams of crack, you would have been in A before, and now you're in B. Those people were suffering from a real disparity in sentences, sometimes dramatic disparity. You had people serving life who might only get 10 years under the Fair Sentencing Act. Everyone knows who's been involved in this, even at a casual distance, knows that the purpose of the First Step Act was to benefit those people, those people whose sentences before the Fair Sentencing Act would be different afterwards. And they should almost automatically get relief, shouldn't they? Or is it the government's position that you want to deny them relief? Well, we absolutely do not want to categorically deny relief. Congress makes it clear that it's not automatic, that the district court still has discretion even where someone's eligible. But isn't it almost automatic? For these types of people, if my client had 6 grams, 6 to 27 grams, that person should get a reduced sentence because the statutory range has changed for that person. That's right, and that's why the usual result is that there are some exceptions. Are you stipulating to these? Yes, we are. You're not fighting every one of these? We've had about 100 cases just in this district. We've agreed, and I've been very pleased to agree. I and Mr. Kuhn, who's in the audience here, are the only ones who handle it in our office. We are pleased to agree in most of these cases. We get a handful of cases where perhaps the person had a variance already, and therefore the sentence really is similar. We also have cases involving violence. You know, bad things happen in prison, and we're not real confident in immediately releasing a person. So we do take advantage in a limited number of cases of the discretion that the statute affords. What happened under the other reading? Some of the district courts that have looked at this have noted that the sentencing commission had anticipated that there would only be 2,600 prisoners eligible and treated that as informing a more restrictive reading. Do you have fidelity in the actual numbers if the defenders' reading of the statute were in effect, and what's been the experience of those circuits that have adopted that approach? So I know that nationwide there have been more than 2,000 of these motions already granted, and there are many that are still being considered. So it's consistent with the original prediction. Much less than half of those are affected by this issue, of people whose quantity would still support the same sentence after the Fair Sentencing Act. Like I said, and our district is typical. It always is when we deal with these retroactive issues. The majority of people here who are applying are eligible, and we are pleased to tell the district court that and then go to the proceeding. Are they eligible because their crack offender is writ large, or are they eligible because their statutory range has actually changed because of their drug quantity? The second. They're eligible because they had six grants, or they had 54 grants, or they're in those sweet spots where it's different before the Fair Sentencing Act and after the Fair Sentencing Act. If we go back to the statutory text, the first step act on eligibility defines cover defense to mean violation of a federal criminal statute. I understand you want us to read that all together and look at the term violation. But as you pointed out, and I had been considering also, the Fair Sentencing Act, it relates to not just 841. There are other statutes like importation, exportation that are addressed. So when it talks about the violation of a federal criminal statute, why wouldn't we look to the particular statute for how the term violation is defined? And in 841, it's 841A that is identified as the violation, and 841B simply as penalties. Exactly, and that's what supports us is that the 841 violation, the penalty then depends on the quantity as set forth in 841B. But that's where the first step act modifies B. It doesn't modify the violation. The violation is in A, and A is just the unlawful act of manufacturing, distributing. Right. This section is interesting. It gets to your question. I have so much I want to cover here, but you raised a really interesting question about what's an element of the offense that you talked about, Your Honor. And it gets back to this sort of debate we had back from Apprendi. Neither the Supreme Court nor this court has ever definitively said that quantity is an element of a drug trafficking crime. What the Supreme Court held in Apprendi, and this court faithfully followed, is it has to be treated like an element because of the constitutional principle of raising the penalty. Anything that changes the statutory range should be treated as an element. It has to be treated like an element because we don't put people in jail when judges find by a preponderance of the evidence a certain quantity. The jury needs to find that. But what treating like an element means is that it has to be charged in the indictment and it has to be proven to a jury beyond a reasonable doubt. But the courts have never said that 841B is an element by itself of a criminal offense. It has to be treated like that for prosecution purposes. Exactly, but doesn't that tell us that if we're looking at the term violation standing alone, if we take out the threshold quantity and think of that not as an element itself, then we're left with violation as it's used in 841, just meaning the unlawful act of manufacturing, possessing with intent to distribute. And then the First Step Act makes a lot of sense in its phrasing as referring to that violation where the penalties have been modified. But it's still the violation of the act of the offense, not a quantity of the offense conduct or relevant conduct. Right, it makes a lot of sense in our favor. The violation has not changed. It's the exact same offense of possessing crack with intent to distribute. What has changed is the statutory penalties that rest on quantity. But then you're passed eligibility, right? But the First Step Act says that if the statutory penalties for the violation have changed, then he can be resentenced as if the Fair Sentencing Act was in effect. If you have someone whose statutory penalties have not changed, such as Mr. Jackson, that person is not eligible because if you sentence him as if the Fair Sentencing Act were in effect, it would be the exact same outcome. I mean, that's getting to 404B. If we're looking at the eligibility question, if we're in agreement that violation means 841A and the violation hasn't changed, then it's for every violation that the statutory penalties have been modified by the Fair Sentencing Act when we look at 841. Well, first of all, I think it's appropriate to look at A and B together in considering what the statute means and what Congress intended. But this gets to the bigger point. If the defense position here is correct that any violation, any crack violation, is eligible, Congress could have written this in a much clearer way, which would favor the incredible outcome that they're advocating. The thing to say would be if you were a crack offender before August 3rd of 2010, come on back. Because that's the argument here. They're relying on the fact that we were required in indictments before 2010 to put in either 5 grams or 50 grams. And then they go to the next step of pretending that these crimes somehow involved only 5 or 50. What that does is that makes every single person who was convicted of a crack offense and only a crack offense before 2010 eligible for this incredible benefit of coming back and getting reconsideration of their sentence. Why doesn't it just say we're looking at a different, we recognize a difference in the statutory range and the difference between a quantity that was proven beyond a reasonable doubt versus a quantity that was found by a judge? And this is where we get to the statutory history. In the scheme of this, it's an absurdity. The concern of Congress, appropriately, is that somebody who had 55 grams before the Fair Sentencing Act is serving a completely different sentence and a more severe sentence than someone who has 55 grams today. That's what Congress meant to fix. To suggest that Congress then also said, oh, and everyone else who had 10 kilos, 100 kilos, who has the same sentencing range today as before, come on back. Mr. Jackson had 48 grams of crack in his lap in 2003, I believe it was. If that happens on August 3, 2010, or on any day thereafter, he's still subject to that range of 5 to 40 years. How would a rational Congress say, okay, but still, Mr. Jackson, we're going to give you a consideration, come on back. No one else gets it. No, if your crime did not involve crack, it's a final sentence. If your crime involved powder cocaine, it's a final sentence. It makes no sense. Would it be so unreasonable of Congress to be thinking that, looking at the sentencing back then, if it were a negotiated plea, that stipulations were done against the backdrop of the expected statutory range, that judges were sentencing while not – Melina tells us that we treat an error in the guideline range as presumptively prejudicial, but in Payano, we also recognize that a court's misunderstanding of the statutory range could be prejudicial because it at least informs outer bounds of a court's thinking in sentencing. And at every plea, a defendant is advised of the statutory minimum and maximum as part of making a knowing and voluntary guilty plea. So if those have changed, even if there's a relevant conduct that could be considered, why wouldn't Congress say, given all of that, that it could have affected whether someone entered a plea, where within the range a judge was sentencing, we want to give a district court discretion? So there are a couple of things packed into that. First of all, and this gets to Judge Hardiman's questions earlier, if there is a dispute regarding quantity now, if someone does want to say, you know, I agreed to 33 grams back then because it just didn't matter, but the reality is I would have had a really good argument that it's not 33 grams, it's 27, our answer is let's have at it. That is the appropriate – That person does have a right, right? That's right, and we should have a hearing in front of the district court. If Ms. Martin on rebuttal changes her mind and says 48's not the right number, we want to challenge that. Her client's back as an opportunity. Absolutely. We're going to have a hearing and we're going to decide that. Now, Your Honor might also be suggesting, well, maybe the plea was informed by what the range was. Well, first of all, again, I'd say it's the same range today if the quantity hasn't changed, but even if it has, Congress never allowed in the First Step Act for people to withdraw their pleas. It's all about discretionary power of a district judge. So Congress could do that maybe, but that was not the concern. No, I'm not suggesting it's about withdrawal of pleas, but that the statutory minimum and maximum was if it's now changed, that was something that was conveyed previously, and so where within that range a court might choose to sentence is something that perhaps Congress might reasonably think with a changed statutory range of which that defendant was not advised, let's leave it to the district court to consider whether there should be an adjustment. But the bottom line in these cases is that the statutory range has not changed. The person, the quantity, if there's no dispute... It might have for Mr. Jackson. I mean, Mr. Harris is in a tougher spot because he stipulated. It's hard to get away from that, but Mr. Jackson, I think, could argue, look, you know, the jury wasn't asked to find whether I had 48 grams, and in fact when the government said I had 48 grams, I objected and said that's not right. Right, so if there's that objection, we should consider it. If there's not, if we still agree that it's 48 grams, and by the way, Mr. Jackson, there was a bag in his lap that literally had 48 grams in it, so I know where Ms. Martin is coming from in saying that there's not going to be a dispute in that case. If there's no dispute or if the court resolves that it was that quantity, the statutory range has not changed, and my fundamental argument here is that no rational Congress would want to say that you get resentencing where the undisputed quantity in your case still merits the same statutory range that Congress, we ourselves, have dictated in the Fair Sentencing Act. This is what doesn't make sense. The entire focus of this legislation, of the Fair Sentencing Act and then the First Step Act, is to treat similarly situated people the same. The position that's being taken here by the defense does the opposite. It takes those people from before, lets everyone come back. An important thing that I want to address, and I think this goes to Chief Judge Smith's questions, is well, what about discretion? Let's just leave this to the district court's discretion, and of course we rely on district court discretion quite a bit, but even with that, there is a profound benefit to coming back for resentencing, even if we think district judges will solve the problem in the end. First of all, if the person is seen as having this artificial range based on five grams that never existed, to which we're applying this new penalty structure, there's a strong likelihood that many judges will give a lower sentence. Not just that, but as the court knows, I mean I've been doing this before this court, I've had the privilege for decades, and I've seen hundreds of cases go back for different reasons. There's very often a different sentence on remand. Years have passed, passions have cooled, victims are not available, or they don't want to relive the experience, the person has conduct in prison. There are powerful reasons that someone can get a lower sentence, and what the defense is suggesting here is this narrow class of people, crack cocaine offenders who would face the same sentence today should get this remarkable benefit of having this opportunity. Ms. Stern mentioned, well, there are many pre-Booker, pre-apprendee cases. Absolutely. There are thousands of inmates still in federal prison who did not commit crack offenses, who were pre-Booker, pre-apprendee, who would relish the opportunity to come back, but this court emphatically held, as did every other circuit, that Booker and apprendee do not apply retroactively. They don't get that opportunity. How do we look at this language of the First Step Act and say that Congress meant crack offenders, whose penalties would be the same today, to have that benefit that isn't extended to anyone else? Why can't that be appropriately handled, thinking about it as abuse of discretion? Because, inevitably, there will be different sentences imposed by different judges, there will be lower sentences, and it's undue. There's also the fact of the— Isn't your better argument not that the pre-Booker people who are armed bank robbers don't get this opportunity? Isn't it sort of a more obvious argument that Mr. Howard, in my hypothetical, who commits the exact same crime with the exact same cronyty as Mr. Harris, after the remedial legislation, is going to be put in a worse position than Mr. Harris? Absolutely. Is there any precedent for that? No, there's not. He's put in an identical position if today he's charged with five or more grams, and then there's just a finding in the PSR or by a judge as to it being 29. Well, of course we wouldn't charge five grams today, in the same way that we didn't charge 28 grams back then. I understood, but isn't that the right comparison? Well, no, Your Honor, with all respect. And I want to add that it's more, if I may say, Your Honor, than simply that he would be subject to the same sentence. Actually, many of these defendants, if the defendant's position prevails, would face both lower statutory sentences and lower guideline sentences if we're pretending that these were five-gram offenses. First of all, if they're right, if everybody who was subject to A and B now gets to come back and be treated as if they were B and C, which is really what they're arguing, the mandatory minimum sentences go away. Subsection B has a mandatory minimum of five years. If Mr. Jackson is eligible because we're pretending that it was a five-gram offense, that mandatory minimum goes away. He's being treated better, not just in having the opportunity for resentencing, but having an artificially different statutory sentencing exposure. It's also true for the guidelines, and this is actually Harris rather than Jackson. I don't want to step on Mr. Carroll, but with respect to Harris, both of these men were career offenders. The career offender guideline, as the court knows, depends on the statutory maximum for the crime, and that's why people who did get the benefit of the Fair Sentencing Act, many of them have a lower guideline range because when you're kicked from A to B or B to C, you're also going down on the guideline table. Mr. Harris's range as a career offender in subsection B was 210 to 262 months. If he gets to go back for sentencing now, before pretending that his offense involved five grams even though it didn't, his guideline range is 168 to 210. And so you want to talk about your hypothetical Mr. Howard. Mr. Howard has walked into court today looking at 210 to 262 as a career offender. The disparity here is just inescapable, and it's inappropriate, and there's no conception that Congress intended this when Congress was acting to solve a specific problem, which was the people who were treated worse before 2010, and making things better for them. Could you wrap up in about a minute? Again, the most other important thing I want to talk about is the other circuit court decisions. Very limited precedent elsewhere. I acknowledge there are many district court decisions that hold the other way. There was sort of a snowball effect, and what these decisions strikingly do not address is this whole aura of the statutory history and the legislative intent, and that's true of Worsing. Worsing in the Fourth Circuit did not have to reach this question. The government agreed he was eligible. It was a 16-gram offense. It was B before it's C now, and Worsing went ahead focused only on the statutory language and not considering any of the other arguments that I'm presenting. Did that undermine your argument? There seem to be a lot of the district court opinions where the government did not assert this gateway argument that you're asserting here. We've asserted it throughout the country. Many district courts didn't accept it. I'm free to admit that, but I think... Forget about the courts. I'm saying it appeared from... I didn't read all the district court cases, but I read several of them. It appeared in many of those that the government did not challenge the eligibility, what I'm calling the threshold issue. There are some, particularly in the early days as the government's developing its understanding and its position on this. There are many district courts that agree with our position as well. Importantly, at the circuit level, the Fourth Circuit disagrees looking only at the statutory language. The Fifth Circuit in Jackson, same thing. The government did not serve the court well in that case. The briefing didn't make the arguments I'm making. The court did not have a real argument. The other circuits that are cited, the Sixth and the Eighth and Bemis and McDonnell, they really don't reach this issue at all. There's agreement to eligibility in those cases. We have a thin circuit record here, and I'm glad that this court has the opportunity to examine it and I think bring some reason to this area. Thank you. Mr. Carroll. May it please the court, Ira Carroll on behalf of the United States. We can all agree that the purpose here is to eliminate disparities, and as Judge Crouch said, at some point, the district court has to be able to look at the actual conduct if it's going to eliminate those disparities. We can't treat someone with 100 kilograms the same as someone with 285 grams, the same as someone with 55 grams. And so at some point, the district court has to be allowed to look at actual conduct. That's what the district court did here. There's no abuse of discretion. Everyone has conceded that at some point the district court's allowed to look at that. 33.6 grams, as everyone said, has the 5-40 year statutory range today. The district court didn't go your way on the threshold issue, the gateway issue. She assumed that she was entitled to look at it. Do you accept that? Well, she assumed it away. We said in our brief the court can affirm on the threshold issue if it agrees with the government's position, which Mr. Zausman has spelled out, but the district court just assumed that away and jumped and made the practical decision. At some point, she's allowed to look at the actual conduct. She did. The actual conduct's 33.6 grams. Statutory range of 5-40 years. Guidelines range of 2 times 262. Nothing has changed. Does this mean, in your view, Mr. Carroll, a district court can never abuse its discretion at step two if the offender's guideline, excuse me, statutory range has not changed? I don't know that I'd say never. You know, if the district court said something racist in their analysis, I think we'd be willing to look at that and we probably can see that there was some sort of abuse of discretion. But there's no abuse of discretion here. The district court looked at it and reached the same conclusion we've all reached, that 33.6 grams gets the same sentencing. What about the converse? Is it your argument that it must be an abuse of discretion if the statutory range hasn't changed? How could the district judge impose a reduced sentence if the statutory range hasn't changed? Well, we'd want to look at it, but you could see a district court judge saying, you know, statutory range was 28.5 grams, right on the bubble. It's a close call. The facts were kind of weak. They've done great work in prison. They've been a model citizen. It felt harsh at the time. And so maybe the judge would want to lower it, and maybe you'd agree with that. Well, okay, so from your perspective, the government's perspective from the other side of the commonwealth, this really isn't just about righting the wrongs of crack disparities or disparities for crack offenders. It's about a holistic approach to resentencing. I think the district judge should reopen the whole thing and take a look at how has this guy done in his last six years in prison and what's his family circumstance and are his parents elderly in need of care. All of that is now on the table. This isn't about saying that your quantity for a crack offense was unduly harsh. Well, then I apologize if I misspoke. We definitely continue to agree with everything Mr. Zausmer said. That's the government's position. But when you say that the judge can look and say, well, 28.5 grams, that's sort of near the threshold. I mean, that bespeaks a holistic approach to resentencing. That's not about whether the statutory range was altered. Right, and I said if the district court did that, we'd want to evaluate and determine whether we're going to take an affirmative appeal and challenge that. But, you know, you could imagine a district court doing something like that, and I wouldn't want to stand here today and say one way or the other what our position would be. But that's decidedly not this case, and that has nothing to do with this case. In this case, it's clearly 33.6 grams. State troopers found that it was. The district court looked at him and said there's nothing to do here. You know, that question of what the district court can look at is squarely before the court in Easter where that issue arises. But the reason, sorry to badger you about this, but I'm not understanding, because the reason there's nothing to do here, your words I assume, is because he stipulated to the 33 grams, right? Yes. Okay, but that doesn't shed any light on has he done good time? Has he gotten his GED? Does he have a child now at home who needs him to parent? There are myriad issues that judges consider at sentencing. And when you say there's nothing to do here, it sounds like you're taking all of those things off the table. Well, there's nothing to do here because the district court did consider all those things. So the issue of what the district court can and cannot consider isn't really here. But how about more generally than this particular case? So if we don't agree with your interpretation on violation, and we're looking at this at the second step where there is discretion, is the government advocating for sort of two steps there, the way courts were doing it with the guidelines in retroactivity of considering first whether there is a difference and then moving to the other 35-63A factors as something the government would ask us either to give guidance on or through individual cases would be appealing and challenging abuse of discretion. If, for example, the court were to say no change in statutory range, no change in the guideline range, but based on rehabilitation over the last several years, going to change the sentence. So I think definitely, I'm not sure that it has to be two steps, but definitely within the district court has to look at whether the statutory range has changed. Because that's what 404B says, right? Look at it as if the Fair Sentencing Act applies, did the statutory range change? So that has to be part of the analysis. But there's a difference in presuming this between that being a quantity that was found, if violation is the generic term, versus offense or relevant conduct. So let's assume the latter. And even with the latter, if a court's to say, so now that I've taken account of relevant conduct, statutory range doesn't change, guideline range doesn't change. But for other 3553A reasons, I'm going to reduce the sentence. Would it be the government's position that that was per se an abuse of discretion? I don't know that I would say per se an abuse of discretion. We'd have to see what the district court's reasoning was and why. But we'd want to take a look at it. It might be an abuse of discretion. Thank you very much. Mr. Carroll, Ms. Martin, we'll have you back on rebuttal. I know we are very focused, of course, on the purpose and effect. But I just want to quickly point out a violation of a federal criminal statute involving a quantity for which the statutory penalties would have been modified and that would have been a very simple way to articulate what the government is asking for here. It also, I might add, in were modified would have been the correct verb tense to use when we're referring to a past that is contrary to actual fact. I believe that the statutory language should be the end of the analysis, but I would like to address a couple points. First of all, Mr. Zalzmer's point about United States versus Worthing. First of all, the Fourth Circuit did take the time to talk about the purpose of the statute and was very clear that the purpose of the statute was to reach out to those crack offenders who could not benefit from guideline amendments. I would suggest that the purpose is also to try to remedy this horrendous crack powder disparity that we have had going on for so long. I'm going to take this opportunity to add one thing to the Booker-Kimbrough list, and that is that I have five cases that came pre-1992 collateral where we didn't have a rule about reasonable foreseeability in conspiracy cases. And, yes, I will be challenging those cases, and the reason I do not think that's appropriate at the eligibility stage is because, as Mr. Zalzmer pointed out, if we're talking about whether we can meet the elements of offense, we are going to have a mini-trial just based on eligibility. It is much more complicated and unworkable than coming before a district judge and saying, these are the facts of this case. This is what was happening then. This is what's happening now. You can make a discretionary decision about that. The reason I wanted to talk about Worthing was because it's a very good example, as is United States versus Jackson, on how unworkable this eligibility is. In both cases, the government changed... I'm a little stricter on rebuttal. You may continue, but Worthing, we're, of course, not bound by. It's helpful, persuasive. So time is limited on rebuttal. Okay, thank you very much. I didn't mean to cut you off. I just want to point out, in both Worthing and Jackson, the government changed positions two or three times, and at oral argument, the panel in the Fourth Circuit said, the district court found this person ineligible. We're going to explain why he is. It was a fully briefed issue, and it was fully argued. And the same thing happened in Jackson. The court said, the government's view is less than clear. We need to hammer this out and figure out what the rules should be. So they were both thoroughly briefed and argued before those courts. Of course, I have several more things. My only thought would be that one hypothetical, the hypothetical Mr. Howard, does not make an absurdity. And I would propose to you, if we are making extreme hypotheticals, I would propose a person who is not. I could ask about the Smith hypothetical, but I've tried to avoid doing that when presiding with the Chief. The person I'm most concerned about here, quite frankly, is the person who had 281 grams of crack and was subject to mandatory life imprisonment, just as the person with 281 kilograms. And I just feel very strongly that we can't shut that door at the eligibility stage. We need our district courts to look at these. Thank you. Thank you. Ms. Stern. Briefly, there's been a lot of focus on the fact that Mr. Harris stipulated. I just want to point out that that stipulation was against the backdrop, understanding that absence of stipulation, the judge could find relevant conduct drug quantity under a preponderance of the evidence standard at sentencing for guideline purposes. So the stipulation was not entered the way an admission to an element of offense is entered, with the backdrop understanding that a jury will find that fact beyond a reasonable doubt. And these differences are significant. It means that the judge's determination now of the statutory penalty range based on that stipulation violates Apprendi, violates the Fifth and Sixth Amendments, and is contrary to Rule 11. Are there any cases that apply the Apprendi Allene to reductions? Why isn't it a one-way ratchet to protect defendants from increases? Congress legislates in front of these background constitutional principles, Russ v. Sullivan, other cases cited in our brief, that all of the language in Section 404A and B demonstrates that this is a type of sentencing proceeding, and we're not in these cases asking the court to talk about the outer bounds of what's possible at the second stage. These cases are really about what at a bare minimum is required when the court moves from Step 1 to Step 2, and I submit if it's a statute of conviction-based approach, which is consistent with the way courts fix statutory ranges at sentencing proceedings that happen every day, then the court has to apply the lower Post-Fair Sentencing Act statutory range and make the guideline adjustments that flow from that here. Because he was a career offender, the statutory maximum set his offense level. He should be going from an offense level of 34 to 32. And then any determination, exercise of discretion, needs to be guided by that. This is like a sentencing error where the court applies the wrong guideline range or the wrong statutory range. We cannot trust the analysis that follows because the judge here used the wrong starting point. We'd ask that you reverse and remand for the judge to reconsider using the appropriate Post-Fair Sentencing Act statutory range. For this particular case where the court assumes eligibility and goes forward as stating it's exercising its discretion, why is there a basis to do that? The court assumed eligibility but then essentially negated that finding by looping back to the pre-Fair Sentencing Act statutory range. And that was based on improper judge-found facts about how that case would be charged today. Essentially, she amended the charge to find him guilty of possession with intent to distribute 28 grams or more. When a court then determines that there's no change in the statutory range and thus no change in the guideline range, of course no change in the guideline range is required here, but any momentum Mr. Harris had from Section 404 is gone. His motion's been gutted. The court then loops back to post-sentencing conduct and finds, well, this isn't a basis alone to reduce the sentence. This analysis was very confused. If this court's going to take a statute of conviction-based approach, this case must go back for an exercise of discretion using the correct starting point of the analysis. Thank you. Thank you very much, Ms. Stern. Thank you to all of counsel. I think we have an understanding from all of you, and thanks to all of you, of not only the issues before us but the implications of how we resolve those issues. So we thank you for your briefing and your very helpful arguments. We'll take the case under review.